**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**YASSER A. IBRAHIM SOLIMAN,**

**Plaintiff,**

**v.** **Case No. 8:06-cv-1811-T-30MSS**

**HILLSBOROUGH SCHOOL DISTRICT,**

**Defendant.**
______________________________________/

# ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment and Memorandum of Law (Dkt. #20), Deposition of Yasser Ibrahim Soliman (Dkt. #21), Affidavit of Charles Raburn (Dkt. #22), and *Pro se* Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. #23). The Court, having considered the motion, response, exhibits, deposition, affidavit, and being otherwise advised in the premises, concludes that Defendant's motion should be granted.

## Background.

The Plaintiff's complaint consists of three counts arising from 42 U.S.C. §1981 ("§1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et. seq*. ("Title VII"), and Fla. Stat. §760.01, Florida Civil Rights Act ("FCRA"). In Count I, the Plaintiff invokes §1981, alleging the School District of Hillsborough County (the "School District") failed to hire Plaintiff based on his religion (Muslim) and his national origin (Egyptian). Count II invokes Title VII, alleging discrimination based on Plaintiff's religion

and national origin. This alleged discrimination is described as harassment and failure to hire. Count III invokes the FCRA, alleging discrimination in the form of failure to hire due to religion and national origin. The School District denies all allegations and seeks summary judgment in its favor.

In 2005, Plaintiff Yasser A. Ibrahim Soliman ("Plaintiff" or "Soliman") applied for two positions with the School District, a technical position entitled "Electrician III" and a supervisory position entitled "Maintenance Unit Manager." Plaintiff was not interviewed or selected for either position. Plaintiff claims that the School District's hiring decisions were based on his religion and national origin.

Plaintiff admits that prior to filing a complaint with the EEOC he did not know the religious background or national origin of the two individuals hired to fill the positions at issue. In response to a request by the EEOC, Defendant provided of copy of the applications submitted by William Rose (selected for the Electrician III position) and Jeff McNickle (selected for the Maintenance Unit Manager position.) Both applicants checked boxes entitled "White, Non-Hispanic."[1] The religious preferences of Rose and McNickle are not known.

The application used by the School District does not ask for the applicant's religion. The application does ask for ethnicity, however, "Egyptian" and/or "Arab" are not among the options. The application reads, in pertinent part:

---

[1] *See* Dkts. #20-3 and #20-4.

> We ask for your ethnicity so we may judge our hiring practices and Equal Employment Opportunity compliance. It WILL NOT be used in making employment decisions, except as allowed by law.
>
> ☐ American Indian/Alaskan Native
> ☐ Asian Pacific Islander
> ☐ Black, Non Hispanic
> ☐ Hispanic
> ☐ Multi Racial
> ☐ None Selected
> ☐ None of the Above
> ☐ White, Non-Hispanic[2]

Neither Plaintiff nor Defendant has provided evidence reflecting which box, if any, was checked by Plaintiff.

Plaintiff's discrimination case is based solely on his belief that the successful applicants were less qualified than him and he was discriminated against based on his religion or national origin.[3] Plaintiff has offered his resume as evidence of his educational and technical background. Plaintiff's resume reflects recent work history with HARTline transit company as an automotive technician for electronic and mechanical breakdowns. From 1995-1999, Plaintiff worked in Germany as a repair technician for automotive repair workshops as well as for construction companies installing and repairing water treatment/electrical power generators/heating and cooling systems. From 1988-1993, Plaintiff worked for the Egyptian government as a mechanical engineer on a large project building a materials factory. From 1983-1985, Plaintiff served in the Egyptian military as

---

[2] *See* Dkt. #22-3, Application for Employment. Defendant has provided a copy of the application form which would have been completed by Plaintiff. Defendant did not maintain a copy of Plaintiff's application after the selection process was completed.

[3] A portion of Plaintiff's complaint attempts to bring a claim for harassment based on the School District's failure to return his telephone calls. Since Plaintiff was not an employee of the School District, he does not fall under the protections of Title VII, Section 1981 or the FCRA relating to a claim for harassment.

a telecommunications officer repairing radio and satellite equipment. Plaintiff has a bachelor's degree in mechanical power engineering from Mansoura University in Egypt and advanced professional training in production management from Carl Deusberg Gesellshaft in Germany.

**Summary Judgment Standard.**

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's determination that no genuine issue of material fact exists shall be based on the totality of the evidence presented in the "pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits submitted." *Id*. A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must go beyond the pleadings to show that a genuine issue exists for trial. *Id*. The non-moving party must come forward with evidence sufficient to establish the existence of the essential elements of its case, which the non-moving party will have the burden to prove at trial. *Id*. The evidence

presented must he construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

In an employment discrimination case, the plaintiff "must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *See Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991). At the summary judgment stage, the inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Jameson v. Arrow Company*, 75 F.3d 1528, 1531 (11th Cir. 1996). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). If plaintiff establishes a prima facie case, the burden shifts to defendant to produce legitimate, nondiscriminatory reasons for the adverse employment action. *Id*. If defendant meets its burden of production, the burden shifts back to plaintiff to establish that those reasons are pretextual. *Id*.

**Discussion.**

Claims under the FCRA are analyzed under the same framework and standards as the Title VII claims. *Reis v. Universal City Development Partners, Ltd.*, 442 F.Supp.2d 1238, 1252 (M.D. Fla. 2006); *see also Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). A claim brought pursuant to Section 1981 is analyzed using the same

framework, so all counts of the Plaintiff's complaint will be examined together. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, the Court will analyze this motion under the Title VII claim, and the decision of the Court regarding the Title VII action will apply to the FCRA and Section 1981 claims as well.

Title VII prohibits discrimination on the basis of race, color, religion, sex or national origin in a variety of employment practices, including hiring, discharge and promotion.[4] *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir. 1994). A "Title VII plaintiff at all times bears the 'ultimate burden of persuasion'." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2749 (1993).

Employment discrimination cases can be proven by either direct or circumstantial evidence. Direct evidence of discrimination is evidence, that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Board of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997). Direct evidence involves "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). There is no direct evidence of discrimination in this case.

When there is no direct evidence, the burden shifting *McDonnell Douglas* analysis applies. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thus, in the instant

---

[4] 42 U.S.C. § 2000e-2(a)(1) provides: It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

case, Plaintiff must prove that: (1) he is a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected for employment; (4) after the rejection, the employer continued to seek applicants with the plaintiff's qualifications outside of plaintiff's particular protected class; and (5) the decision maker was aware of the Plaintiff's religious beliefs or national origin. *Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1305-06 (11th Cir. 2002). Where the plaintiff proves a prima facie case by circumstantial evidence, the burden of proof shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas* at 805. Then, if the defendant carries its burden, the plaintiff must be given "a full and fair opportunity to demonstrate by competent evidence" that the presumptively valid reasons offered by the defendant were a pretext for discrimination. *Id*.

**I. Religious discrimination.**

In order to establish a prima facie case of intentional religious discrimination, Plaintiff must present evidence that the decision-maker knew of his religion. *See Lubetsky*, 296 F.3d at 1306 (appellant failed to establish a prima facie case of intentional discrimination because he did not present any evidence that the decision-maker knew of his religion); *see also Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) (when evaluating a charge of disparate treatment employment discrimination, the court must focus on the actual knowledge and actions of the decision-maker).

No evidence has been presented by Plaintiff indicating that anyone at the School District was aware of Plaintiff's religion. Plaintiff's resume, application and email communications do not reflect a religious preference. Further, Plaintiff does not claim to have told anyone at the School District that he was Muslim prior to filing a claim with the EEOC. Plaintiff has not provided any evidence demonstrating that the decision not to hire him was made by someone who was aware of his religion. Viewing the facts in the light most favorable to Plaintiff, no reasonable fact-finder could conclude that the School District knew of Plaintiff's religion when they decided not to hire him. Accordingly, Plaintiff has failed to establish a prima facie case of religious discrimination.

## II. National origin discrimination.

### A. Prima facie case.

In order to establish a prima facie case of intentional national origin discrimination, Plaintiff must establish that (1) he is a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected for employment; (4) after the rejection, the employer continued to seek applicants with the plaintiff's qualifications outside of plaintiff's particular protected class; and (5) the decision maker was aware of the Plaintiff's national origin. *See Lubetsky* at 1306.

It is undisputed that: Plaintiff is a member of a protected class (Egyptian); his experience and educational background met the minimum qualifications listed on the job postings for each position; he was rejected for employment; and the School District hired

applicants outside of Plaintiff's particular protected class. It is not clear whether the School District was aware of Plaintiff's national origin at the time Plaintiff was rejected. Viewing all facts and inferences in favor of Plaintiff, however, a reasonable fact-finder could conclude that the School District was constructively aware that Plaintiff was Egyptian since his resume reflects that he received his high school diploma and college education from institutions in Egypt and served in the Egyptian military.

**B. Legitimate nondiscriminatory reason.**

Assuming *arguendo* that Plaintiff has established a prima facie case, Defendant has produced a legitimate, non-discriminatory reason for its hiring decisions: the successful applicants were better qualified for the positions at issue (Electrician III and Maintenance Unit Manager).

**1. Electrician III position.**

The Electronics III position involves supervisory or highly independent technical duties in the installation, maintenance, repair and modification of various types of electronic equipment and specifically involved data terminals communications, satellite receivers, and alarms. The job's minimum requirements include six years of installation, maintenance or repair of electronic equipment, with one year at the supervisory level.[5]

William Rose, the candidate selected for the Electrician III position, has 20 years experience installing, repairing and fabricating all electronic communication devices for the

---

[5] *See* Dkt. #22-2, Affidavit of Charles Raburn.

government. He has experience working with circuit boards, electronic testing equipment, alarm systems, telephone equipment as well as training and supervisory experience. The School District determined that out of many applicants Rose was the most qualified for the Electrician III position.

**2. Maintenance Unit Manager.**

The Maintenance Unit Manager position involves supervisory duties for a maintenance unit engaged in public works construction building maintenance, specialized repair and related service. The manager is responsible for planning and scheduling assignments and workloads and reviewing projects, preparing reports and budgets, while also working on specialized assignments. The job's minimum requirements include ten years construction or maintenance experience, with three years at the supervisory level.[6]

Jeff McNickle, the candidate selected for the Maintenance Unit Manager position, has an M.B.A. and 20 years of progressive leadership experience. McNickle has 13 years of experience managing data support systems and budgets of up to $5 million dollars. McNickle also worked as a teacher for the School District as well as the University of Phoenix. The School District determined that out of many applicants McNickle was the most qualified for the Maintenance Unit Manager position.

Upon a review of the successful candidates applications, educational background and work experience, the Court concludes that the School District has provided a legitimate, non-

---

[6] *See id.*

discriminatory reason for its hiring decisions (i.e. the selected candidates possessed work experience more suitable for the posted positions.) While Plaintiff's educational background appears to be equivalent to that of Rose and McNickle, the majority of his work experience was in automotive mechanics - not the focus of either position.

**C. Pretext.**

In order to survive summary judgment once the presumption of discrimination is eliminated, the plaintiff must present "evidence sufficient to permit a reasonable fact-finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). This evidence must be presented at this stage in the lawsuit or the employer is entitled to summary judgment. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024-1025 (11th Cir. 2000). The plaintiff must attack the veracity of the decision maker's reason or show that the real reason for the decision making was discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000). The test for pretext is whether the plaintiff established "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a fact-finder could find them unworthy of credence." *Price v. M&H Valve Co.*, 177 Fed.Appx. 1, 12 (11th Cir. 2006).

The court should not judge which employee was more qualified, but rather the court should determine whether any disparity is so great that a reasonable fact finder could infer that the employer did not believe that the comparator was better qualified. *See Wilson v. B/E Aerospace, Inc.*, 3776 F.3d 1079, 1090 (11th Cir. 2004). Plaintiff cannot show pretext by

questioning the wisdom of the decision maker, as long as any subjective reason used was one that may motivate a reasonable employer. *Wright v. Duval County School Board*, 510 F.Supp.2d 941, 945 (M.D. Fla. 2007). It is not enough for the plaintiff to question the "relative value" the employer placed on different types of experience. *Id*. at 947. The plaintiff must show that the disparities between the successful applicant's and his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Brooks v. County Commission of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Other than Plaintiff's subjective belief that he is more qualified than Rose and McNickle, Plaintiff has presented no evidence showing that the disparities between the successful applicants' and his own qualifications were of such weight and significance that no reasonable fact-finder, in the exercise of impartial judgment, could have chosen the candidate selected over Plaintiff. Accordingly, Plaintiff has failed to show pretext.

For these reasons, the Court concludes that Defendant's motion for summary judgment should be granted.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment and Memorandum of Law (Dkt. #20) is **GRANTED**.

2. The Clerk is directed to **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on May 8, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-1811.msj 20.wpd